1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   KEVIN CHRISTOPHER ROYLE,         )   Civil No. 12cv0659 LAB (RBB)
                                      )
12                  Petitioner,       )   **REPORT AND RECOMMENDATION**
                                      )   **DENYING PETITION FOR WRIT OF**
13   v.                               )   **HABEAS CORPUS [ECF NO. 1]**
                                      )
14   DAVID LONG, Warden,              )
                                      )
15                  Respondent.       )
                                      )
16   _____)

17

18        Petitioner Kevin Christopher Royle, a state prisoner

19   proceeding pro se and in forma pauperis, filed a "First Amended

20   Petition for Writ of Habeas Corpus"[1] on March 5, 2012 [ECF No. 1,

21   _____

22        [1] Petitioner improperly identifies his Petition as the "First
     Amended Petition."  (See Pet. 1, ECF No. 1.)  The operative
23   petition in this case is the original because no amended version
     has been filed.  For purposes of clarity, the Court will cite to
24   the operative pleading merely as the Petition.

25        Because Royle's Petition and Long's Answer are not
     consecutively paginated, the Court will cite to both using the page
26   numbers assigned by the electronic case filing system.

27        Finally, the Court notes that the CM/ECF pagination of Royle's
     Petition is interrupted after page forty-nine.  (See id. at 49; id.
     Attach. #1, 1.)  After page forty-nine, the remainder of the
28   Petition is labeled as Attachment #1 to the Petition.  (See id.
     Attach. #1, 1.)

                                 1                    12cv0659 LAB (RBB)

8]. Royle contends that the trial court violated his due process rights by denying his request to instruct the jury on imperfect self-defense and justifiable homicide based on self-defense. (Pet. 5, 26, ECF No. 1.) Petitioner also asserts that the prosecutor committed two acts of misconduct during closing arguments by improperly appealing to the passions and prejudices of the jury in violation of Petitioner's rights to due process, a trial by jury, and a fair trial. (Id. at 5, 41-43.)

Royle originally filed his Petition in the United States District Court for the Central District of California. (Id. at 1.) On March 15, 2012, the Honorable John Krondstadt transferred the Petition to the Southern District of California. (Order Transferring Action S.D. Cal. 2, ECF No. 3.)

Respondent David Long filed an Answer along with a Memorandum of Points and Authorities on August 8, 2012 [ECF No. 12]. Long argues that Petitioner's due process claim fails because the trial judge reasonably refused to instruct the jury on imperfect self-defense and justifiable homicide based on self-defense after finding that Royle introduced insufficient evidence during the trial to support either theory. (Answer Attach. #1 Mem. P. & A. 10-12, ECF No. 12.) Respondent also contends that a portion of Petitioner's prosecutorial misconduct claim, the invitation to "view the case from the victim's standpoint," (id. at 12), is procedurally defaulted and, alternatively, that Royle's entire prosecutorial claim fails on the merits. (Id. at 12-16.) Petitioner did not file a traverse.

//

//

1   This Court has reviewed the Petition, the Answer, and the

2   lodgments.  For the reasons stated below, the Petition for Writ of

3   Habeas Corpus [ECF No. 1] should be **DENIED**.

## I.   FACTUAL BACKGROUND

The California Court of Appeal gave the following recitation
of the factual background as established at trial:

> James Parker rented a home in Lakeside, California
> where he lived with his girlfriend, Meghan Morgan, and
> her uncles, [Kevin Royle] and Dennis Royle.  Dennis
> testified that on December 29, 2007, Royle pointed a gun
> at him during an argument.  Parker had a "no-gun" policy
> at the residence.  When Parker returned home, Dennis told
> Parker about Royle's gun.  Parker and Royle argued in the
> yard and got into a "small scuffle."  Parker pinned Royle
> to the ground and yelled at him to take the gun out of
> the house.  After the scuffle, Parker followed Royle back
> into the house and continued to argue with him in Royle's
> bedroom.  Parker then went outside and spoke with Morgan
> on his cell phone.  While sitting in the living room,
> Dennis saw Royle exit the house and heard him say, "You
> want some, punk?"  Morgan testified Parker told her about
> the argument during the phone conversation and then she
> heard the phone drop on the ground.  Dennis heard
> gunshots and went outside where he found Parker lying on
> the ground.
>
> Royle's neighbor, Derrell Carriger, testified he
> heard gunfire while sitting at his desk about 100 feet
> away from Parker's driveway.  Carriger stood up, looked
> out his window, and saw Royle pointing a gun at Parker.
> Parker was on the ground on one knee about 10 feet away
> from Royle.  Royle placed the gun in his waistband,
> covered it with his coat, and walked down the driveway.
> Carriger went outside and saw Parker lying on the ground,
> talking on his cell phone in a low voice.
>
> The gunshot wounds caused internal bleeding and
> Parker died quickly.  A pathologist testified the cause
> of Parker's death was a gunshot wound to the lower torso.

(Lodgment No. 6, <u>People v. Royle</u>, No. D055377, slip op. at 2-3
(Cal. Ct. App. Dec. 22, 2010) (footnote omitted).)

## II.   PROCEDURAL BACKGROUND

On May 4, 2009, a jury convicted Royle of count one, murder in
the first degree, and count two, assault with a semi-automatic

firearm.  (Lodgment No. 1, Clerk's Tr. vol. 1, 73.1-73.2, May 4, 2009.)  As to count one, the jury found true the allegations that Petitioner intentionally discharged and personally used a firearm in the commission and attempted commission of murder within the meaning of California Penal Code sections 12022.53(d) and 12022.5(a).  (Id. at 73.1.)  On count two, the jury also found that Royle personally used a firearm in the commission and attempted commission of assault with a semi-automatic firearm within the meaning of California Penal Code section 12022.5(a).  (Id. at 73.2.)

On June 2, 2009, the court sentenced Petitioner to fifty years to life for count one.  (Id. at 97, June 10, 2009.)  For the two enhancement charges under count one, the court sentenced Royle to twenty-five years to life for the California Penal Code section 12022.53(d) violation but stayed sentencing for the California Penal Code section 12022.5(a) violation.  (Id.)  As to count two, the court sentenced Petitioner to six years plus two five-year enhancement terms for previous serious felonies pursuant to California Penal Code section 667(a)(1), totaling sixteen years. (Id. at 95.)  Additionally, the court imposed a $10,000.00 restitution fine under count one pursuant to California Penal Code sections 1202.4(b) and 2085.5.  (Id. at 98.)

Royle filed a notice of appeal on June 16, 2009.  (Id. at 101, June 16, 2009.)  The California Court of Appeal affirmed the judgment in an unpublished opinion filed December 22, 2010. (Lodgment No. 6, People v. Royle, No. D055377, slip op. at 1.)  On January 19, 2011, Royle filed a petition for review in the California Supreme Court.  (Lodgment No. 7, Petition for Review,

People v. Royle, No. [S189913] (Cal. Mar. 2, 2011).)  The

California Supreme Court denied the petition on March 2, 2011.

(Lodgment No. 8, People v. Royle, No. S189913, order at 1 (Cal.

Mar. 2, 2011).)  On March 5, 2012, Petitioner filed his federal

Petition [ECF No. 1].

### III.  STANDARD OF REVIEW

    The Antiterrorism and Effective Death Penalty Act ("AEDPA"),

28 U.S.C. § 2244, applies to all federal habeas petitions filed

after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204

(2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA

sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only on
> the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512

U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th

Cir. 1991).  Because Royle's Petition was filed on March 5, 2012

[Pet. 1, ECF No. 1], AEDPA applies to this case.  See Woodford, 538

U.S. at 204.

    In 1996, Congress "worked substantial changes to the law of

habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

1997), abrogated on other grounds, Williams v. Taylor, 529 U.S. 362

(2000).  As amended, section 2254(d) now reads:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,

1      clearly established Federal law, as determined
       by the Supreme Court of the United States; or
2
       (2) resulted in a decision that was based on an
3      unreasonable determination of the facts in
       light of the evidence presented in the State
4      court proceeding.

5  28 U.S.C.A. § 2254(d).

6      To present a cognizable federal habeas corpus claim, a state

7  prisoner must allege his conviction was obtained "in violation of

8  the Constitution or laws or treaties of the United States."  28

9  U.S.C.A. § 2254(a).  A petitioner must allege the state court

10  violated his federal constitutional rights.  Hernandez, 930 F.2d at

11  719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt

12  v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

13      A federal district court does "not sit as a 'super' state

14  supreme court" with general supervisory authority over the proper

15  application of state law.  Smith v. McCotter, 786 F.2d 697, 700

16  (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

17  (1990) (holding that federal habeas courts must respect a state

18  court's application of state law); Jackson, 921 F.2d at 885

19  (explaining that federal courts have no authority to review a

20  state's application of its law).  Federal courts may grant habeas

21  relief only to correct errors of federal constitutional magnitude.

22  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989)

23  (stating that federal habeas courts are not concerned with errors

24  of state law "unless they rise to the level of a constitutional

25  violation").

26      The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

27  stated that "AEDPA does not require a federal habeas court to adopt

28  any one methodology in deciding the only question that matters

6

1  under § 2254(d)(1) -- whether a state court decision is contrary

2  to, or involved an unreasonable application of, clearly established

3  Federal law." _Id._ at 71.  In other words, a federal court is not

4  required to review the state court decision de novo.  _Id._  Rather,

5  a federal court can proceed directly to the reasonableness analysis

6  under § 2254(d)(1).  _Id._

7       The "novelty in . . . § 2254(d)(1) is . . . the reference to

8  'Federal law, as determined by the Supreme Court of the United

9  States.'"  _Lindh v. Murphy_, 96 F.3d 856, 869 (7th Cir. 1996) (en

10 banc), _rev'd on other grounds_, 521 U.S. 320 (1997).  Section

11 2254(d)(1) "explicitly identifies only the Supreme Court as the

12 font of 'clearly established' rules."  _Id._  "A state court decision

13 may not be overturned on habeas review, for example, because of a

14 conflict with Ninth Circuit-based law . . . ."  _Moore_, 108 F.3d at

15 264.  "[A] writ may issue only when the state court decision is

16 'contrary to, or involved an unreasonable application of,' an

17 authoritative decision of the Supreme Court."  _Id._ (citing

18 _Childress v. Johnson_, 103 F.3d 1221, 1224-26 (5th Cir. 1997); _Devin_

19 _v. DeTella_, 101 F.3d 1206, 1208 (7th Cir. 1996); _Baylor v. Estelle_,

20 94 F.3d 1321, 1325 (9th Cir. 1996)).

21      Furthermore, with respect to the factual findings of the trial

22 court, AEDPA provides:

23           In a proceeding instituted by an application for a
         writ of habeas corpus by a person in custody pursuant to
24       the judgment of a State court, a determination of a
         factual issue made by a State court shall be presumed to
25       be correct.  The applicant shall have the burden of
         rebutting the presumption of correctness by clear and
26       convincing evidence.

27 28 U.S.C.A. § 2254(e)(1).

28 //

**IV.   DISCUSSION**

**A.   Claim One:  Due Process Violation**

Royle contends the trial court violated his right to due process by denying his request to instruct the jury on imperfect self-defense and justifiable homicide based on self-defense ("perfect self-defense").  (Pet. 26, ECF No. 1.)  Petitioner maintains that these instructions should have been given because he and Parker, his roommate, argued and engaged in a scuffle before Royle shot and killed him.  (Id.)  Specifically, Petitioner claims that after he was told that Royle had a gun, Parker became irate and started arguing with Petitioner.  (Id. at 36.)  This confrontation escalated into a fight, during which Parker pinned Royle to the ground.  (Id. at 26, 36.)  Parker then followed Petitioner as he retreated to his bedroom and told Royle that he needed to move out.  (Id. at 36.)  Parker went back outside; Petitioner grabbed a gun and followed.  (Id. at 26, 36.)  During their confrontation, according to Petitioner, Parker became "increasingly angry and charged at [Royle] . . . ."  (Id. at 34.)  Royle shot and killed Parker.  (Id. at 26, 34, 36.)  Given these facts, Petitioner insists that the "instructions were supported by substantial evidence and relied upon by [Royle]."  (Id. at 30.)

Petitioner asserts that his attorney argued this theory of self-defense to the jury during closing arguments.  (Id. at 34.)  Royle's counsel stated:

> Let's just say -- Let's just pretend that on the day that this shooting, this crime that killed Mr. Parker occurred, there happened to be some people on a hill a mile away doing some videotaping for a new freeway that they were putting through.  And lo and behold, it turns out that they videotaped this incident.  They've got it on film and we just found it.  [¶]  And what the videotape shows is my client getting into an argument out

1           there in the street and Mr. Parker who was getting
increasingly angry, we know, getting pissed and charging
2           at him.  And my client yelling at him, get away from me
you son-of-a-bee, bang-bang.

3

4  (*Id.* at 35 (quoting Lodgment No. 2, Rep.'s Tr. vol. 5, 674, May 1,

5  2009).)

6     Accordingly, the trial court erred, Royle submits, when it

7  ruled that the subjective elements of perfect and imperfect self-

8  defense were not supported by the evidence.  (Pet. 36, ECF No. 1.)

9  Petitioner insists that "even though the elements of murder were

10  encompassed in the other instructions and the People had to prove

11  there was not unjustifiable self-defense, more specific jury

12  instructions were necessitated by the evidence."  (*Id.* at 33.)

13     Royle further complains that the trial court's refusal to give

14  the self-defense instructions was prejudicial under <u>Chapman v.</u>

15  <u>California</u>, 386 U.S. 18 (1967).  (*Id.* at 37.)  Petitioner was

16  convicted of first-degree murder; the jury rejected the lesser

17  charges of second-degree murder and voluntary manslaughter based on

18  a sudden quarrel or heat of passion.  (*Id.*)  Royle maintains that

19  these facts should not bear on the harmless-error analysis.  (*Id.*)

20  Had the jury been properly instructed, according to Royle, it could

21  have found either self-defense theory applicable because sufficient

22  evidence was introduced at trial to support each.  (*Id.* at 38.)  He

23  also contends that under the harmless-error standard outlined in

24  <u>People v. Watson</u>, 46 Cal. 2d 818, 836, 299 P.2d 243, 254 (1956),

25  this Court should find that it is reasonably probable that the jury

26  would have reached a decision that was more favorable to him if the

27  //

28  //

1   instructional error had not occurred.[2]  (Id.)  Royle concludes by

2   noting that the jury deliberated over two days and asked for

3   additional information regarding the instruction for second-degree

4   murder.  (Id. at 39.)  This, claims Petitioner, demonstrates that

5   the evidence of his guilt was not overwhelming.  (Id.)

6       Respondent argues that Royle's claim fails because the state

7   courts reasonably determined that the requested instructions were

8   not supported by the evidence.  (Answer Attach. #1 Mem. P. & A. 10,

9   ECF No. 12.)  "The evidence available showed that Royle got his

10  gun, followed Parker as he walked outside, intended to injure him

11  as evidenced by his statement 'you want some, punk,' and then shot

12  him dead."  (Id. at 12.)  Respondent insists that the court of

13  appeal reasonably concluded that the facts were insufficient to

14  support the requested instructions.  (Id.)

15      The trial court explained the basis for refusing to give

16  Petitioner's requested jury instructions:

17      [I]t's the Court's view that the state of the evidence is
        such that the subjective elements of both perfect and
18      imperfect self-defense is [sic] lacking here in the case
        and I don't believe that there is substantial evidence in
19      the record that would support the giving of either
        instruction and neither of them will be given.
20

21  (Pet. 34, ECF No. 1 (quoting Lodgement No. 2, Rep.'s Tr. vol. 5,

22  623).)

23      To determine whether Royle introduced sufficient evidence at

24  trial to warrant self-defense jury instructions, the Court looks

25  through to the California Court of Appeal's opinion because it is

26  _____

27      [2]  "Watson supplies the harmless error standard applied by
    California appellate courts in reviewing trial errors that do not
    reach constitutional magnitude . . . ."  Ortiz v. Yates, 704 F.3d
28  1026, 1033 n.4 (9th Cir. 2012) (citing People v. Watson, 46 Cal. 2d
    at 836, 299 P.2d at 254).

1   the last reasoned state court opinion.  Vansickel v. White, 166

2   F.3d 953, 957 (9th Cir. 1999).  The Court presumes that "[w]here

3   there has been one reasoned state judgment rejecting a federal

4   claim, later unexplained orders upholding that judgment or

5   rejecting the same claim rest upon the same ground."  Ylst v.

6   Nunnemaker, 501 U.S. 797, 803 (1999).

7        The California Court of Appeal held that the trial court did

8   not err in refusing to give the requested instructions because

9   Petitioner "presented no evidence to support the giving of the

10  requested instructions . . . ."  (Lodgment No. 6, People v. Royle,

11  No. D055377, slip op. at 5.)  Specifically, the court stated:

12       The record is devoid of evidence suggesting Royle shot
         Parker because he actually believed he was in imminent
13       danger of being killed or seriously injured.  Royle and
         Parker engaged in a "small scuffle" in the yard, but the
14       physical portion of the altercation had ended before
         Royle pursued Parker outside and shot him. . . . Given
15       [the] state of the evidence, in which nothing suggests
         Parker charged at Royle and there is no evidence from
16       which the jury can infer that to be the case, the
         subjective elements required for imperfect self-defense
17       and perfect self-defense are lacking. . . .

18            . . . [T]he [trial] court instructed the jury on the
         lesser included offense of voluntary manslaughter based
19       upon the alternate theories of sudden quarrel and heat of
         passion.  The jury's verdict finding Royle guilty of
20       first degree murder implicitly rejected those theories
         and defense counsel's version of the events, leaving no
21       doubt the jury would have returned the same verdict even
         had it been given the self-defense instructions.
22       (Accord, People v. Manriquez, supra, 37 Cal.4th at pp.
         582-583.)  Thus, even presuming the instructions should
23       have been given, any error was not prejudicial even under
         a harmless beyond a reasonable doubt standard.  (See
24       People v. Demetrulias (2006) 39 Cal.4th 1, 23-24.)

25  (Id. at 6-7.)  The appellate court also noted that, although

26  "defense counsel asked the jury [during closing arguments] to

27  'pretend' a videotape existed showing Parker 'charging' Royle[,]"

28  statements made by counsel during closing arguments are not

11

1  evidence and the jury was repeatedly instructed on this point.

2  (Id. at 6-7.)

3        "In conducting habeas review, a federal court is limited to

4  deciding whether a conviction violated the Constitution, laws, or

5  treaties of the United States." Estelle v. McGuire, 502 U.S. 62,

6  68 (1991); see also 28 U.S.C.A. § 2254(a).  Although challenges to

7  jury instructions under state law are generally not cognizable on

8  habeas corpus review, federal habeas relief is warranted where a

9  petitioner establishes that the ailing instruction "so infected the

10 entire trial that the resulting conviction violates due process."

11 See Estelle, 502 U.S. at 72 (internal quotations and citations

12 omitted); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643

13 (1974) (explaining that the challenged instruction cannot merely be

14 "undesirable, erroneous, or even 'universally condemned'" -- it

15 must violate some constitutional right).  The effect of the

16 instruction can only be determined in the context of the

17 instructions as a whole and the trial record.  See Estelle, 502

18 U.S. at 72.

19       The standard is the same for claims of omitted or incomplete

20 instructions.  Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir.

21 2001).  It is clearly established that "[a]n omission, or an

22 incomplete instruction, is less likely to be prejudicial than a

23 misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155

24 (1977).  As with challenges to jury instructions that were given,

25 the omission of a jury instruction is evaluated in light of the

26 instructions as a whole.  See Murtishaw, 255 F.3d at 973.  "It is

27 well established that a criminal defendant is entitled to adequate

28 instructions on the defense theory of the case[,]" provided the

12

theory is supported by law and there is some foundation in the evidence.  Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999) (citing United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990), overruled on other grounds, United States v. Doe, 705 F.3d 1134 (9th Cir. 2013)).

The instructing court need not give the jury instruction exactly as proposed by the defendant; "it is not error to refuse a proposed instruction so long as the other instructions in their entirety cover that theory." United States v. Kenny, 645 F.2d 1323, 1337 (9th Cir. 1981); see, e.g., United States v. Bonanno, 852 F.2d 434, 440 (9th Cir. 1988) ("A defendant is not entitled to a separate good faith instruction when the court adequately instructs on specific intent.")  If a federal habeas court determines that the trial court erred in instructing the jury, it must also determine whether the error prejudiced the defendant. See Henderson, 431 U.S. at 154.

1.   **The sufficiency of the evidence for a self-defense jury instruction**

Petitioner requested jury instructions on perfect and imperfect self-defense.  (Lodgment No. 2, Rep.'s Tr. vol. 5, 622-23; see also Lodgment No. 1, Clerk's Tr. vol. 1, 27-30, May 4, 2009.)  The jury instruction Royle requested for voluntary manslaughter based on imperfect self-defense provides:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense.
>
> If you conclude the defendant acted in complete self-defense, his action was lawful and you must find him not guilty of any crime.  The difference between complete self-defense and imperfect self-defense depends on whether the defendant's belief in the need to use deadly force was reasonable.

13

1     The defendant acted in imperfect self-defense if:

2    1. The defendant actually believed that he was in
       imminent danger of being killed or suffering
3      great bodily injury;

4    AND

5    2. The defendant actually believed that the
       immediate use of deadly force was necessary to
6      defend against the danger;

7    BUT

8    3. At least one of those beliefs was unreasonable.

9  (See Lodgment No. 6, People v. Royle, D055377, slip op. at 4;

10  Lodgment No. 1, Clerk's Tr. vol. 1, 27-28); see also 1 Judicial

11  Council of Cal., Criminal Jury Instructions:  CALCRIM No. 571 (Jan.

12  2006) ("CALCRIM").

13  The jury instruction for justifiable homicide based on self-

14  defense, as requested by Royle, provides:

15    The defendant is not guilty of murder or
    manslaughter if he was justified in killing someone in
16    self-defense.  The defendant acted in lawful self-defense
    if:
17

18    1. The defendant reasonably believed that he was
       in imminent danger of being killed or suffering
19      great bodily injury;

20    2. The defendant reasonably believed that the
       immediate use of deadly force was necessary to
21      defend against that danger;

22    AND

23    3. The defendant used no more force than was
      reasonably necessary to defend against that
24      danger.

25  (See Lodgment No. 6, People v. Royle, D055377, slip op. at 4;

26  Lodgment No. 1, Clerk's Tr. vol. 1, 29-30); see also 1 CALCRIM No.

27  505.

28  //

            14

During its case in chief, the State called Petitioner's brother, Dennis Royle, as a witness. (Lodgment No. 2, Rep.'s Tr. vol. 3, 278, Apr. 29, 2009.)[3]  On cross-examination, Carnessale asked Dennis if Parker and Petitioner had fought in the front yard. (Id. at 296.)  Dennis answered, "There was a bit of a scuffle in the yard."  (Id.)  Carnessale then asked, "At some point in time, [Parker] was actually on top of [Royle], right?"  (Id.)  Dennis responded that Parker had Petitioner pinned on the ground for approximately thirty seconds.  (Id. at 297.)  Then, Royle returned to his room and Parker followed him, telling Royle to leave the house.  (Id. at 300.)  According to Dennis, Parker went back outside and Royle followed him and someone said, "Do you want some, punk?"  (Id. at 300, 304-05.)  Dennis heard "unintelligible" yelling between Parker and Royle in the front yard, but "[Parker] wasn't yelling loud," and Dennis "[did not] think [Petitioner] would shoot [Parker]."  (Id. at 305-06.)

During trial, Royle called one witness, Lance Martini, a criminalist and forensic scientist specializing in firearms related matters. (Id. vol. 4, 592-93, Apr. 30, 2009.)[4]  Martini testified that during the shooting, Petitioner and Parker were approximately three to six inches away from each other.  (Id. at 598.)  Martini also testified on re-cross-examination that he was unable to

//

---

[3]  Because Dennis Royle was unavailable to testify at trial, his prior testimony -- given under oath on February 27, 2008 -- was read to the jury.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 278-79.)

[4]  Although Carnessale claimed on the record that he intended to call another witness, it does not appear that any other defense witnesses were called.  (See id. at 619; see generally id. vol. 5, at 625; Lodgment No. 1, Clerk's Tr. vol. 1, 145-50, Apr. 30 & May 1, 2009; Pet. 25, ECF No. 1.)

12cv0659 LAB (RBB)

1   determine how Petitioner and Parker were moving in relation to one

2   another at the time of the shooting.  (Id. at 617-18.)

3       During his closing argument, defense counsel stated:

4           Let's just say -- let's just pretend that on the day
        that this shooting, this crime that killed Mr. Parker
5       occurred, there happened to be some people on a hill a
        mile away doing some videotaping for a new freeway that
6       they were putting through.  And lo and behold, it turns
        out that they videotaped this incident.  They've got it
7       on film and we just found it.  [¶]  And what the
        videotape shows is my client getting into an argument out
8       there in the street and Mr. Parker who was getting
        increasingly angry, we know, getting pissed and charging
9       at him.  And my client yelling at him, get away from me
        you son-of-a-bee, bang-bang.

10

11  (Lodgment No. 2, Rep.'s Tr. vol. 5, 674.)

12      Evidence that Petitioner and Parker were approximately three

13  to six inches away from one another when Royle shot Parker, along

14  with Martini's inconclusive testimony on their relative movements

15  at the time of the shooting, is not sufficient to support

16  instructions for either perfect or imperfect self-defense.  See

17  Matthews v. United States, 485 U.S. 58, 63 (1998) ("As a general

18  proposition a defendant is entitled to an instruction as to any

19  recognized defense for which there exists evidence sufficient for a

20  reasonable jury to find in his favor." (citations omitted)).

21  Testimony that Parker and Petitioner were close at the time of the

22  shooting does not demonstrate Royle's "belie[f] that he was in

23  imminent danger of being killed or suffering great bodily

24  injury . . . ."  See 1 CALCRIM Nos. 505, 571.  Nor does it show

25  Royle's belief in the need to use force against Parker.  See id.

26  Furthermore, although Dennis Royle testified during his direct

27  examination by the State that Petitioner and Parker briefly fought

28  in the yard, nothing in his testimony indicates that the physical

16

1  altercation was ongoing when Royle shot the victim.  (See Lodgment

2  No. 2, Rep.'s Tr. vol. 3, 288-96, 307.)

3      Royle did not provide evidence sufficient to establish his

4  need to use force; thus, he cannot show that the force he used --

5  multiple gun shots resulting in death -- was reasonably necessary.

6  See 1 CALCRIM Nos. 505, 571.  Petitioner failed to present evidence

7  sufficient to support the specific elements of both perfect and

8  imperfect self-defense, rendering each instruction inapplicable.

9  See Kincy v. Harrington, No. CV 11-9253-JAK (PLA), 2012 U.S. Dist.

10 LEXIS 77378, at *40-46 (C.D. Cal. May 31, 2012) (holding that trial

11 court's refusal to instruct jury on self-defense did not violate

12 petitioner's due process rights where the evidence was insufficient

13 for a reasonable jury to find the specific elements of self-

14 defense).  Similarly, the trial court's refusal to provide Royle's

15 requested self-defense instructions, therefore, did not violate his

16 due process rights.  See id.

17     The only time during the trial when Royle argued his self-

18 defense theory was during closing argument.  The court properly

19 instructed the jury that counsels' statements made during closing

20 arguments are not evidence.  (Lodgment No. 2, Rep.'s Tr. vol. 5,

21 652.)  It is presumed that jurors follow the court's instructions

22 "absent extraordinary situations."  Tak Sun Tan v. Runnels, 413

23 F.3d 1101, 1115 (9th Cir. 2005) (citing Francis v. Franklin, 471

24 U.S. 307, 324 n.9 (1985)).

25     Based on the evidence presented at trial, Petitioner has

26 failed to demonstrate that jury instructions based on self-defense

27 were merited.  See Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th

28 Cir. 1992) ("Where the alleged error is the failure to give an

17

1  instruction[,] the burden on the petitioner is 'especially

2  heavy.'") (quoting <u>Henderson</u>, 431 U.S. 145).  The trial court's

3  refusal to give the instructions was neither "contrary to, or

4  involved an unreasonable application of, clearly established

5  Federal law," nor was it "a decision that was based on an

6  unreasonable determination of the facts in light of the evidence

7  presented" at trial.  <u>See</u> 28 U.S.C.A. § 2254(d).

8      **2.   Whether the jury instructions adequately covered Royle's**

9           **defense theory**

10  The trial court instructed the jury on the lesser included

11  offense of voluntary manslaughter based on sudden quarrel or heat

12  of passion under California Penal Code section 192(a).  (Lodgment

13  No. 1, Clerk's Tr. vol. 1, 64-65, May 4, 2009.)  The complete

14  instruction reads as follows:

15      A killing that would otherwise be murder is reduced
        to voluntary manslaughter if the defendant killed someone
16      because of a sudden quarrel or in the heat of passion.

17      The defendant killed someone because of a sudden
        quarrel or in the heat of passion if:
18
19      1.   The defendant was provoked;

20      2.   As a result of the provocation, the defendant
             acted rashly and under the influence of intense
             emotion that obscured his reasoning or
21           judgment;

22      AND

23      3.   The provocation would have caused a person of
             average disposition to act rashly and without
24           due deliberation, that is, from passion rather
             than from judgment.
25
        Heat of passion does not require anger, rage, or any
26      specific emotion.  It can be any violent or intense
        emotion that causes a person to act without due
27      deliberation and reflection.

28      In order for heat of passion to reduce a murder to
        voluntary manslaughter, the defendant must have acted

18

1    under the direct and immediate influence of provocation
     as I have defined it.  While no specific type of
2    provocation is required, slight or remote provocation is
     not sufficient.  Sufficient provocation may occur over a
3    short or long period of time.

4         It is not enough that the defendant simply was
     provoked.  The defendant is not allowed to set up his own
5    standard of conduct.  You must decide whether the
     defendant was provoked and whether the provocation was
6    sufficient.  In deciding whether the provocation was
     sufficient, consider whether an ordinary person of
7    average disposition would have been provoked and how such
     a person would react in the same situation knowing the
8    same facts.

9         If enough time passed between the provocation and
     the killing for an ordinary person of average disposition
10   to "cool off" and regain his clear reasoning and
     judgment, then the killing is not reduced to voluntary
11   manslaughter on this basis.

12        The People have the burden of proving beyond a
     reasonable doubt that the defendant did not kill as the
13   result of a sudden quarrel or in the heat of passion.  If
     the People have not met this burden, you must find the
14   defendant not guilty of murder.

15   (Id.); see also 1 CALCRIM No. 570.

16        As with the sufficiency of the evidence evaluation above, the

17   Court continues to look through to the California Court of Appeal's

18   opinion to determine whether the instructions given to the jury

19   adequately covered Petitioner's defense theory.  Vansickel, 166

20   F.3d at 957.  The court of appeal determined that "[t]he jury's

21   verdict finding Royle guilty of first degree murder implicitly

22   rejected [the sudden quarrel and heat of passion] theories and

23   defense counsel's version of the events, leaving no doubt the jury

24   would have returned the same verdict even had it been given the

25   self-defense instructions."  (Lodgment No. 6, People v. Royle, No.

26   D055377, slip op. at 7.)

27        Viewing "the context of the instructions as a whole and the

28   trial record[,]" the Court finds Royle's theory was sufficiently

19

covered by the instructions given at trial.   See Estelle, 502 U.S.
at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).   The
trial court instructed the jury on manslaughter based on sudden
quarrel or heat of passion.   (Lodgment No. 1, Clerk's Tr. vol. 1,
64-65); see also 1 CALCRIM No. 570.   To find that Royle's actions
took place during a sudden quarrel or in the heat of passion, the
jury had to find that he was provoked prior to the shooting.   See
1 CALCRIM Nos. 522, 570.   The evidence showed that "Royle and
Parker engaged in a 'small scuffle' in the yard, but the physical
portion of the altercation had ended before Royle pursued Parker
outside and shot him."   (Lodgment No. 6, People v. Royle, No.
D055377, slip op. at 6; see generally Lodgment No. 2, Rep.'s Tr.
vol. 3, 278-307; id. vol. 4 at 375-76; 395-403.)

    The jury returned a guilty verdict for first-degree murder
rather than manslaughter; it implicitly accepted the State's
evidence and found there was no continuing altercation to justify
Royle killing Parker.   See Ponce v. Harrington, No. C 09-5730 RS,
2012 WL 4058379, at *4 (N.D. Cal. Sept. 14, 2012) (holding that
habeas relief was not warranted on the basis that the jury was not
instructed on imperfect self-defense, especially in light of the
fact that the jury convicted the petitioner of first-degree
murder).   Like Ponce, the jury would have returned the same verdict
with or without the requested self-defense instructions; therefore,
Royle was not prejudiced by the trial court's refusal to provide
the jury with either self-defense instruction.   See Henderson, 431
U.S. at 154-55.

    Finally, Petitioner claims that the time the jury spent
deliberating along with the jury's request for clarification of the

second-degree murder instruction shows that the jury was
inadequately instructed.  (Pet. 39, ECF No. 1.)  Both contentions
lack merit.  Despite Royle's insistence that "[t]he jury
deliberated over two days[,]" the jurors actually spent less than
one court day deliberating.  (Compare id., with Lodgment No. 2,
Rep.'s Tr. vol. 5, 707, 720, May 1, 4, 2009 (showing that jury
deliberations began after the noon break on Friday, May 1, 2009,
and concluded at 10:01 a.m. on Monday, May 4, 2009).)  Petitioner's
calculation of the amount of time spent deliberating is a
misstatement of the facts and does not support his claim that the
jury was inadequately instructed.

Royle's next assertion -- that the jury asked for
clarification of the second-degree murder instruction -- fails to
mention the context in which the request was made.  The trial judge
had inadvertently skipped a line when initially reading the second-
degree murder instruction to the jury.  (See Lodgment No. 2, Rep.'s
Tr. vol. 5, 711, May 1, 2009.)  When notified of the jury's
inquiry, the trial judge verified the written instructions
regarding second-degree murder that were given to the jury were
complete and then re-read the affected instructions to the jury "to
rectify [the] mistake . . . ."  (Id.)  The jury's request, viewed
in its proper context, is not evidence that the jury was struggling
with the instructions or giving serious consideration to
Petitioner's requested defenses.  See Hudson v. Cal. Dep't of
Corrs., No. EDCV 04-01050 CAS(AN), 2008 WL 2676943, at *14 (C.D.
Cal. July 7, 2008) (holding that habeas relief for instructional
error based on incomplete instruction was appropriate only when the
record demonstrated that the jury's decision was substantially

influenced by the error) (citing <u>O'Neal v. McAninch</u>, 513 U.S. 432,
434 (1995)).  Here, the trial judge simply re-read the agreed-upon
instructions to the jury when asked for clarification; Petitioner
has not alleged the instructions contained an error that influenced
the jury.  (<u>See</u> Pet. 26-40, ECF No. 1.)

On this record, the omission of the requested jury
instructions does not implicate due process.  Even if the omitted
instructions had been given to the jury, there is not a reasonable
probability that the outcome of Royle's trial would have been
different.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993).
The state appellate court concluded that the failure to instruct
the jury on voluntary manslaughter based on imperfect self-defense
and on justifiable homicide based on self-defense was not in error.
(Lodgment No. 6, <u>People v. Royle</u>, D055377, slip op. at 6.)  It also
found that Royle was not prejudiced by the claimed instructional
errors.  (<u>Id.</u> at 7.)  The state court decision was not contrary to,
or an unreasonable application of, clearly established Supreme
Court law.  Nor was it based on an unreasonable determination of
the facts.  For these reasons, the Court recommends that Royle be
**DENIED** habeas relief on his due process claim.

**B.   Claim Two:  Prosecutorial Misconduct**

Royle complains that Ross, the prosecuting attorney at
Petitioner's trial, committed two acts of misconduct during the
State's rebuttal closing argument by improperly appealing to the
passions and prejudices of the jury in violation of Royle's rights
to due process, a trial by jury, and a fair trial.  (Pet. 41-43,
ECF No. 1.)  Long replies that Petitioner's complaint about the
first alleged instance of prosecutorial misconduct is procedurally

defaulted due to Royle's failure to request a curative jury
instruction at the time of his objection at trial.  (Answer Attach.
#1 Mem. P. & A. 14, ECF No. 12.)  Alternatively, Respondent argues
that the claim fails on the merits.  (Id. at 14-16.)

Royle raised his prosecutorial misconduct claims in a petition
for review in the California Supreme Court on January 19, 2011.
(Lodgment No. 7, Petition for Review, People v. Royle, No.
[S189913].)  On March 2, 2011, the court denied the petition
without a citation of authority or a statement of reasoning.
(Lodgment No. 8, People v. Royle, No. S189913, order at 1.)  Royle
also presented his claims to the California Court of Appeal on
direct appeal, which were denied in an unpublished opinion.
(Lodgment No. 6, People v. Royle, No. D055377, slip op. at 7-10.)
The appellate court held that Petitioner had forfeited his first
alleged instance of prosecutorial misconduct by failing to request
a curative jury instruction contemporaneously with his objection at
trial.  (Id. at 8.)  The court, nevertheless, examined the claim on
the merits and concluded that even if the prosecutor's statement
rose to the level of misconduct, it was harmless.  (Id. at 8-9.)

This Court looks to the California Court of Appeal's opinion
because it is the last reasoned state court opinion to address
Royle's claims.  Vansickel, 166 F.3d at 957.

    **1.   Whether Petitioner's first claim of prosecutorial
misconduct is procedurally defaulted**

Long contends that Petitioner's first alleged instance of
prosecutorial misconduct is procedurally defaulted because Royle
did not request that the jury be admonished after he successfully
objected at trial.  (Answer Attach. #1 Mem. P. & A. 14, ECF No.

1  12.)   According to Respondent, this independent and adequate

2  procedural bar precludes this Court from addressing the merits of

3  Petitioner's claim.  (<u>Id.</u>)

4       Royle insists that his claims for prosecutorial misconduct

5  were properly preserved for appeal.  (Pet. 43, ECF No. 1.)

6  Petitioner maintains that because of "the unorthodox and unique

7  circumstances" surrounding the objection, alleged to have been made

8  by the jury foreperson, standard waiver procedures should not

9  apply.[5]  (<u>Id.</u> at 43-44.)  Royle further submits that it would have

10 been futile for his attorney to object to the prosecutor's

11 statement and request a jury admonition after the foreperson's

12 objection.  (<u>Id.</u> at 44.)  Alternatively, his counsel's failure to

13 request a jury admonition was ineffective assistance of counsel.

14 (<u>Id.</u>)

15      State courts may decline to review a claim because of a

16 procedural default, absent a showing of "cause" and "prejudice."

17 <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977).  "Just as in those

18 cases in which a state prisoner fails to exhaust state remedies, a

19 habeas petitioner who has failed to meet the State's procedural

20 requirements for presenting his federal claims has deprived the

21 state courts of an opportunity to address those claims in the first

22 instance."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991).  A

23 habeas petitioner who has defaulted federal claims in state court

24 by not complying with rules to raise them meets the technical

25

26      [5]  The California Court of Appeal found, and this Court
    agrees, that although the reporter's transcript attributes this
27 objection to the jury foreperson, "[t]his appears to be an error as
    the jury foreperson had not yet been selected.  It is likely the
28 objection was lodged by Royle's counsel." (Lodgment No. 6, <u>People
    v. Royle</u>, No. D055377, slip op. at 8 n.3.)

1  requirements for exhaustion because there are no longer any state

2  remedies available.  Id. at 732 (citing 28 U.S.C. § 2254(b); Engle

3  v. Issac, 456 U.S. 107, 125-26 n.28 (1982)).

4      "A federal habeas court will not review a claim rejected by a

5  state court 'if the decision of [the state] court rests on a state

6  law ground that is independent of the federal question and adequate

7  to support the judgment.'"  Beard v. Kindler, 558 U.S. 53, 55

8  (2009) (alteration in original) (quoting Coleman, 501 U.S. at 729).

9  "In order to constitute adequate and independent grounds sufficient

10 to support a finding of procedural default, a state rule must be

11 clear, consistently applied, and well-established at the time of

12 the petitioner's purported default."  Wells v. Maass, 28 F.3d 1005,

13 1010 (9th Cir. 1994) (citing Ford v. Georgia, 498 U.S. 411, 424-25

14 (1991)).

15     Even if a basis for a state procedural bar exists, it "does

16 not prevent a federal court from resolving a federal claim unless

17 the state court actually relied on the state procedural bar 'as an

18 independent basis for its disposition of the case.'"  Evans v.

19 Chavis, 546 U.S. 189, 206 (2006) (quoting Harris v. Reed, 489 U.S.

20 255, 261-62 (1989)).  A procedural default does not preclude the

21 Court from considering a federal claim on habeas review "unless the

22 last state court rendering a judgment in the case 'clearly and

23 expressly' states that its judgment rests on a state procedural

24 bar."  Harris, 489 U.S. at 263 (quoting Caldwell v. Mississippi,

25 472 U.S. 320, 327 (1985)).  At the same time, "a state court need

26 not fear reaching the merits of a federal claim in an alternative

27 holding."  Id. at 264 n.10.  If the state court explicitly invokes

28 a state procedural bar as a distinct basis for its decision, the

1  federal habeas court is required "to honor a state holding that is
2  a sufficient basis for the state court's judgment, even when the
3  state court also relies on federal law." Id. (citing Fox Film
4  Corp. v. Muller, 296 U.S. 207, 210 (1935)).

5      The respondent has the initial burden of pleading an adequate
6  and independent procedural bar as an affirmative defense in a
7  habeas case. See Insyxienqmay v. Morgan, 403 F.3d 657, 665–66 (9th
8  Cir. 2005); Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).
9  Long has met his initial burden by pleading that Royle's first
10 alleged claim of prosecutorial misconduct was forfeited due to
11 defense counsel's failure to request a jury admonition
12 contemporaneously with his objection. (Answer Attach. #1 Mem. P. &
13 A. 14, ECF No. 12.) The fact that the state appellate court
14 applied the procedural bar and also reached the merits of the
15 claims does not bar Respondent from advancing a procedural default.
16 Harris, 489 U.S. at 264 n.10.

17     The burden has therefore shifted to Royle to challenge the
18 adequacy and independence of the procedural bar. Bennett, 322 F.3d
19 at 586. This may be done by pointing to factual allegations and
20 case authority demonstrating inconsistent application of the rule.
21 Id. If Petitioner makes a sufficient challenge, Respondent must
22 carry the ultimate burden of proving adequacy of the state bar.
23 Id.; see also Insyxienqmay, 403 F.3d at 666. Royle asserts that
24 his claims are not procedurally defaulted, but he does not
25 explicitly state that the procedural bar is inconsistently applied.
26 (See Pet. 43-44, ECF No. 1.) He does maintain, however, that
27 traditional waiver and forfeiture rules are inapplicable here
28 because contemporaneously requesting a jury admonition with either

1    objection would have been futile.  (<u>Id.</u>)  He also relies on the

2    "the unorthodox and unique circumstances" of the first objection

3    (the mistaken statement that an objection was made by the jury

4    foreperson).[6]  (<u>Id.</u>)

5        The Ninth Circuit has indicated that "[p]rocedural bar issues

6    are not infrequently more complex than the merits issues presented

7    by the appeal, so it may well make sense in some instances to

8    proceed to the merits if the result will be the same."  <u>Franklin v.</u>

9    <u>Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing <u>Lambrix v.</u>

10   <u>Singletary</u>, 520 U.S. 518, 525 (1997) ("We do not mean to suggest

11   that the procedural-bar issue must invariably be resolved first;

12   only that it ordinarily should be.")).  District courts have

13   applied the same rationale.  <u>See</u> <u>Levi v. Almager</u>, No. CV

14   08-4261-PSG (CW), 2011 WL 2672351, at *3 n.1 (C.D. Cal. May 6,

15   2011) (deciding merits of delayed access to law library claim

16   rather than resolving the procedural bar question first).

17       The California Court of Appeal, in addition to holding that

18   Royle forfeited his first claim of prosecutorial misconduct,

19   concluded that the first claim of improper closing remarks was

20   harmless, and the second set of remarks did not amount to

21   misconduct.  (Lodgment No. 6, <u>People v. Royle</u>, No. D055377, slip

22   op. at 8-10.)  Judicial economy counsels reaching the substance of

23   Royle's prosecutorial misconduct claims without a determination of

24   whether the state procedural bar applied in this case was clear,

25   //

26

_____

27       [6]  As discussed above in footnote 5, the California Court of
     Appeal concluded that the reporter's transcript mistakenly
28   attributes to the foreperson the objection defense counsel made to
     the prosecutor's closing argument.

1  well-established, and consistently applied by California courts.

2  See Levi, 2011 WL 2672351, at *3 n.1.

3      **2.   The prosecutor's final appeals to the jury**

4      Royle complains that Ross committed two acts of prosecutorial

5  misconduct by improperly appealing to the passions and prejudices

6  of the jury during the State's rebuttal closing argument.  (Pet.

7  41-43, ECF No. 1.)  Petitioner asserts that the first instance of

8  misconduct occurred when Ross improperly asked the jury to view the

9  case from the victim's viewpoint.  (Id. at 42.)  The second

10  instance was when the prosecutor "essentially told the jury the

11  People were justified in prosecuting [Royle] of first degree

12  murder."  (Id. at 47.)  According to Petitioner, the jury responded

13  to Ross's misconduct, as demonstrated by the jury foreperson's

14  objection to the first statement.  (Id. Attach. #1, 2.)  Royle

15  submits that the misconduct resulted in a miscarriage of justice

16  without which it is reasonably likely he would have obtained a more

17  favorable verdict.  (Id. at 3.)

18      Long insists that Royle's prosecutorial misconduct claims fail

19  on the merits.  (Answer Attach. #1 Mem. P. & A. 15-16, ECF No. 12.)

20  According to Respondent, Ross's statements were "milder" than those

21  in Darden v. Wainwright, 477 U.S. 168 (1986); thus, the California

22  Court of Appeal reasonably denied Royle's prosecutorial misconduct

23  claims on the merits.  (Id.)

24      The last state court to address the merits of Petitioner's

25  prosecutorial misconduct claims was the California Court of Appeal.

26  (See Lodgment No. 6, People v. Royle, No. D055377, slip op. at 7-

27  10.)  This Court examines that decision.  Ylst v. Nunnemaker, 501

28  U.S. at 806.

The court of appeal concluded that Ross's statement inviting the jury to consider what Parker would say if he were present at the trial amounted to harmless error. (Lodgment No. 6, <u>People v. Royle</u>, No. D055377, slip op. at 8.)  It stated that "[t]he evidence of Royle's guilt was strong and corroborated by physical evidence as well as testimony from Dennis, Morgan, and Carriger.  Further, the trial court instructed the jurors they were not to be influenced by sympathy, prejudice, or opinion." (<u>Id.</u>)  The jury was presumed to have followed the trial court's instructions. (<u>Id.</u>)  The court of appeal held that Petitioner did not suffer prejudice from the prosecutor's first statement; accordingly, "any presumed misconduct was harmless under any standard, even the <u>Chapman</u> beyond a reasonable doubt standard." (<u>Id.</u> at 8-9 (citing <u>Chapman</u>, 386 U.S. at 24).)

The appellate court also held that Royle's second claimed instance of prosecutorial misconduct was not improper because it "did not imply that [Ross] based his belief of Royle's guilt on evidence not presented at trial." (<u>Id.</u> at 9.)  Rather, it held that the prosecutor's second statement was a "reasonable commentary on the evidence." (<u>Id.</u>)

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." <u>See Darden</u>, 477 U.S. at 193; <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  To obtain federal habeas relief on this claim, Royle must do more than demonstrate that the prosecutor's comments were improper. <u>Tak Sun Tan</u>, 413 F.3d at

1112; see also Darden, 477 U.S. at 180-81.   Petitioner must show
they "'so infected the trial with unfairness as to make the
resulting conviction a denial of due process.'"   Darden, 477 U.S.
at 181 (quoting Donnelly, 416 U.S. 637); accord Greer v. Miller,
483 U.S. 756, 765 (1987); Tak Sun Tan, 413 F.3d at 1112; Thompson
v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996).   In measuring the
fairness of the trial, a court may consider, inter alia, "(1)
whether the prosecutor's comments manipulated or misstated the
evidence; (2) whether the trial court gave a curative instruction;
and (3) the weight of the evidence against the accused."   Tak Sun
Tan, 413 F.3d at 1115 (citing Darden, 477 U.S. at 181-82).   If
prosecutorial misconduct is established, and it was constitutional
error, the court must decide whether the constitutional error was
harmless.   Thompson, 74 F.3d at 1576-77.

Habeas corpus relief may be granted if the adjudication of the
claim "resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States . . . ."
28 U.S.C.A. § 2254(d)(1).   "The prosecutors' comments must be
evaluated in light of the defense argument that preceded it
. . . ."   Darden, 477 U.S. at 179.

### a.   Arguing from the vantage point of the victim

In his rebuttal closing argument, Ross made the following
statement, which Royle claims constitutes prosecutorial misconduct:

> MR. ROSS: [] It's kind of cliche, but what would Jim
> Parker tell you if he was here?   If he could, which
> obviously he can't, hopefully his spirt [sic] is with us
> today as well as his family, he would say, isn't it
> ironic I had a no-gun rule, had to give my life to prove
> that, but looking back on things, I guess Meghan Ryan was
> a little nuttier than I thought.   Dennis Royle, nice guy,
> alcoholic, but he was harmless.   And I wish I never would

1    have let uncle Kevin Royle live in my house because he
     killed me.  He's a nut I knew it was coming, that's why I
2    had the no-gun rule.

3    THE FOREPERSON [sic]: Your Honor, I'm going to object to
     the testimony of the victim.

4
     THE COURT: Sustained.
5

6   (Pet. 42, ECF No. 1 (quoting Lodgment No. 2, Rep.'s Tr. vol. 5,

7   689).)

8        "'Counsel are given latitude in the presentation of their

9   closing arguments . . . .'"  Ceja v. Stewart, 97 F.3d 1246, 1253-54

10  (9th Cir. 1996) (quoting United States v. Baker, 10 F.3d 1374, 1415

11  (9th Cir. 1993), overruled on other grounds, United States v.

12  Norbdy, 225 F.3d 1053 (9th Cir. 2000)).  "It is helpful as an

13  initial matter to place these remarks in context."  Darden, 477

14  U.S. at 179.  In Darden, the prosecutors made several improper

15  statements in closing arguments.  For instance, the prosecution

16  recommended the death penalty for the defendant, stating, "'That's

17  the only way that I know that he is not going to get out on the

18  public.'"  Id. at 180 n.10.  The prosecutor also stated, "'As far

19  as I am concerned, . . . [Defendant is] an animal . . . .'"  Id. at

20  n.11.  "'I wish [the decedent] had had a shotgun in his hand . . .

21  and blown [Defendant's] face off.  I wish that I could see him

22  sitting here with no face, blown away by a shotgun.'"  Id. at n.12.

23  The Court held that the comments were offensive and "undoubtedly

24  were improper."  Id. at 180.  Ultimately, however, the Court

25  determined the defendant was not deprived of a fair trial.  Id. at

26  181.

27       Here, the California Court of Appeal did not decide whether

28  the prosecutor's closing remarks -- inviting the jury to view the

1  scene from the vantage point of the victim –– amounted to

2  misconduct.  (See Lodgment No. 6, People v. Royle, No. D055377,

3  slip op. at 8.)  Instead, it concluded that the claim had been

4  forfeited.  (Id.)  Nevertheless, the court held that assuming that

5  Ross's statement constituted misconduct, it was harmless error.

6  (Id. at 8-9.)

7      The state court noted that "[t]he evidence of Royle's guilt

8  was strong and corroborated by physical evidence as well as

9  testimony from Dennis, Morgan, and Carriger."  (Id. at 8.)

10  Furthermore, the jury was instructed "not to be influenced by

11  sympathy, prejudice, or opinion[]" and "not to consider statements

12  by counsel as evidence."  (Id.)  The court of appeal presumed that

13  the instructions were followed.  (Id.; see also Lodgment No. 2,

14  Rep.'s Tr. vol. 5, 652.)

15      The evidence clearly showed that Royle shot and killed Parker

16  after the physical altercation had ended.  Dennis Royle testified

17  that after the initial physical encounter, Royle followed Parker

18  back outside, said, "Do you want some, punk?" and then shot and

19  killed him.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 300, 304-06.)

20  Dennis heard "unintelligible" yelling between the victim and

21  Petitioner in the front yard, but it was not loud and he did not

22  expect Royle to shoot Parker.  (Id. at 305-06.)  Morgan also

23  testified that she was on the phone with Parker when he was shot.

24  (See id. vol. 4 at 395-96, 400-03.)  Her testimony was corroborated

25  by Carriger's testimony that when he first approached Parker after

26  the shooting, he was on his cell phone.  (Id. at 375-76)

27      Ross's statements must be viewed in context.  His comments

28  came at the end of trial.  (See Lodgment No. 2, Rep.'s Tr. vol. 5,

32

689, 696-97.)   The remarks were isolated comments.   The court

sustained Royle's objection to the first statement and had

previously instructed the jury not to be persuaded by sympathy,

prejudice, or opinion.   <u>See</u> <u>Greer</u>, 483 U.S. at 766-67 (stating that

a prosecutor's allegedly prejudicial statements must be evaluated

in the context of the entire trial) (internal quotations and

citations omitted); <u>Hall v. Whitley</u>, 935 F.2d 164, 165-66 (9th Cir.

1991) ("Put in proper context, the comments were isolated moments

in a three day trial.").

The appellate court decision that Ross's statements were

harmless and caused Royle no prejudice is neither contrary to, nor

an unreasonable application of, clearly established Supreme Court

law.   <u>See</u> 28 U.S.C.A. § 2254(d)(1).

**b.   Stating a personal opinion on Royle's guilt**

Petitioner also takes issue with the following remarks:

MR. ROSS: []  I don't mean to make light of what
happened here but I want to give you real life examples
of premeditation and deliberation cause [sic] that's what
Kevin Royle did.  Justice here warrants holding him
accountable.

Once again, I know it's not a pleasant task, it
doesn't bring me great joy to be here by any means to ask
you to do this.

MR. CARNESSALE:  I would object.  This is improper.

THE COURT:  Overruled.

MR. CARNESSALE [sic][]:[7]  The evidence, not
probabilities, not other theories, the evidence is that
he's guilty of first-degree murder.  Thank you so much
for your time and attention and please hold him
accountable.

//

_____

    [7]  This statement was most likely made by Ross, not by
Carnessale.

1  (Pet. 43, ECF No. 1 (quoting Lodgment No. 2, Rep.'s Tr. vol. 5,

2  696-97).)

3       The state appellate court examined the merits of Royle's

4  second claim of prosecutorial misconduct during closing argument --

5  expressing a personal opinion on Royle's guilty impliedly based on

6  evidence not presented at trial.  (Lodgment No. 6, People v. Royle,

7  No. D055377, slip op. at 9.)  It observed that Ross "did not imply

8  that he based his belief of Royle's guilt on evidence not presented

9  at trial."  (Id.)  The court emphasized the prosecutor's statement

10  that "'[t]he evidence, not possibilities, not other theories, the

11  evidence in this case is that [Royle is] guilty of first-degree

12  murder . . . and please hold him accountable.'"  (Id.)  The

13  California Court of Appeal concluded that "the prosecutor's second

14  statement was a reasonable commentary on the evidence and not an

15  improper opinion of the defendant's guilt . . . ."  (Id. at 10.)

16       The issue is whether the comments rendered Royle's trial so

17  unfair that his conviction was a denial of due process.  Darden,

18  477 U.S. at 181 (quoting Donnelly, 416 U.S. at 637).  The

19  prosecutor's statement that "justice here warrants holding [Royle]

20  accountable," is distinguishable from the improper statements made

21  in Darden.  Furthermore, "'a court should not lightly infer that a

22  prosecutor intends an ambiguous remark to have its most damaging

23  meaning or that a jury, sitting through lengthy exhortation, will

24  draw that meaning from the plethora of less damaging

25  interpretations.'"  Williams v. Borg, 139 F.3d 737, 744 (9th Cir.

26  1998) (quoting Donnelly, 416 U.S. at 647).  The complained of

27  remarks did not suggest that Ross held an opinion based on evidence

28  not presented at trial.  Nor were they sufficient to invoke the

34

1   "imprimatur of the Government" to induce the jury to convict Royle

2   because of the "Government's judgment rather than its own view of

3   the evidence."   United States v. Young, 470 U.S. 1, 18-19 (1985).

4        The prosecutor's statement was not "'of sufficient

5   significance to result in the denial of the defendant's right to a

6   fair trial.'"   Greer, 483 U.S. at 765 (quoting United States v.

7   Bagley, 473 U.S. 667, 676 (1985)); see also Darden, 477 U.S. at

8   180-81 (holding that even though the prosecutors' statements were

9   "undoubtedly improper," they still did not deny Darden a fair

10  trial).

11       Accordingly, the state court decision was neither contrary to,

12  nor an unreasonable application of, clearly established United

13  States Supreme Court law.   28 U.S.C.A. § 2254(d)(1).   For all these

14  reasons, ground two in Royle's Petition does not entitle him to

15  relief.   The second claim for habeas relief, based on the

16  prosecutor's alleged improper statement of a personal opinion, also

17  should be **DENIED.**

**V. CONCLUSION**

19       For the above reasons, Kevin Christopher Royle's Petition for

20  Writ of Habeas Corpus should be **DENIED.**   This Report and

21  Recommendation will be submitted to the United States District

22  judge assigned to this case, pursuant to the provisions of 28

23  U.S.C. § 636(b)(1).   Any party may file written objections with the

24  Court and serve a copy on all parties on or before July 1, 2013.

25  The document should be captioned "Objections to Report and

26  Recommendation."   Any Reply to the objections shall be served and

27  filed on or before July 15, 2013.   The parties are advised that

28  failure to file objections within the specified time may waive the

35

1 right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951

2 F.2d 1153, 1157 (9th Cir. 1991).

3

4 DATED: <u>June 3, 2013</u>

5                                          Ruben B. Brooks
                                           United States Magistrate Judge
6

7 cc:  Judge Burns
         All parties of record
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28